UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ADEL BAHJET NASSIF, | ) | Case No.: 1:06 CV 2563 |
| | ) | |
| Petitioner | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| MARK HANSEN, *et al.,* | ) | |
| | ) | |
| Respondents | ) | <u>ORDER</u> |

Pending before the court is Respondents Mark Hansen, *et al.*'s ("Respondents") Motion to Dismiss Petitioner Adel Bahjet Nassif's ("Petitioner") Complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). (ECF No. 22.) For the foregoing reasons, Respondents' Motion to Dismiss, pursuant to Rule 12(b)(1), is granted, and Respondents' Motion to Dismiss, pursuant to Rule 12(b)(6), is denied as moot.

## I. FACTS AND PROCEDURAL HISTORY

### A. Student Visa and Subsequent Unauthorized Employment

It is undisputed that Petitioner is a native of Lebanon who first came to the United States on a non-immigrant (temporary) student visa in 1988. (Resp'ts' Mot. to Dismiss, Ex. A, Administrative Record, ("A.R."), at 45.) Petitioner earned his bachelor's degree in Biology and Chemistry from Cleveland State University in December, 1993. (*Id.*, A.R. at 91.) After graduation, Petitioner remained in the United States without any lawful status, and he accepted unauthorized employment

for more than 180 days at several pizza and sandwich shops. (*Id.*, A.R. at 11.)

## B. Employment-Based Adjustment of Status

Petitioner's employer, Biri, Inc., dba Subway Sandwiches ("Subway"), began the process described below of adjusting Petitioner's alien worker status to that of a lawful permanent resident, *i.e.,* "green card" status, in April, 2001.

### 1. Form ETA-750, Application for Labor Certification

The first step of the three-step process of adjusting the Petitioner's status to that of a lawful permanent resident based on an employment opportunity is for an employer to file a Form ETA-750, Application for Alien Employment Certification ("Form ETA-750" or "labor certification application"), on the alien's behalf with the Department of Labor. The Form ETA-750 should include: a description of the job offer; a statement of the alien's qualifications for the job; complete details of the duties to be performed; and, the wages to be paid. 20 C.F.R. § 656.21(a). The Department of Labor will grant certification of the Form ETA-750 when there is an insufficient number of qualified United States workers available and willing to perform the job.

One way the Department of Labor determines whether a Form ETA-750 should be granted is for them to test the labor market by advertising the job through the local Employment Service Office. 20 C.F.R.§ 656.28. If that recruitment effort is unsuccessful, the labor certification is likely to be granted. *Id.* A faster process for labor certification, called "reduction in recruitment," ("RIR"), involves the employer filing, at the same time that it files the Form ETA-750, documentary evidence that the employer has made good faith efforts to recruit workers in the United States within the preceding six months through sources normal to the occupation (such as advertising in local papers), and that further recruitment will be unsuccessful. 20 C.F.R. § 656.21(i). The labor

certification may then be approved without further recruitment efforts through the local Employment Service office.

### *a. April, 2001, Form ETA-750*

On April 30, 2001, Subway filed a Form ETA-750 on Petitioner's behalf for a "Supervisor" whose duties were "first line supervisor of food preparation workers in a delicatessen," at a rate of $10.00 per hour (or $20,800 a year), with two years experience as a "supervisor or assistant manager in any industry" required. (Resp'ts' Opp'n, Ex. A, A.R. at 154.) This Form ETA-750 was not filed as an RIR case. The labor market for the position at the wages described above was never tested because the Department of Labor found that Subway's Form ETA-750 was deficient. The Department of Labor sent the Form ETA-750 back to Subway, instructing Subway to make changes or deletions on the ETA-750 itself, initial the changes, and return the Form ETA-750 to the Department of Labor by December 24, 2001, for continued processing. (*Id.,* A.R. at 153.)

### *b. December, 2001, RIR Form ETA-750*

In a transmittal letter dated December 18, 2001, Petitioner's attorneys sent the Ohio Bureau of Employment Services a letter asking for the April 30, 2001, Form ETA-750 to be converted to an RIR case with the same priority date and case number. (*Id.,* A.R. at 157.) On December 20, 2001, Subway filed an RIR Form ETA-750 with the U.S. Department of Labor on Petitioner's behalf, which listed a different position than the "Supervisor" position set forth in the April, 2001, Form ETA-750. (*Id.,* A.R. at 102.) Specifically, Subway's new job offer for Petitioner was for a second-line "Supervisor/Food Consultant," at a salary of $54,000 a year, with two years experience as the manager of a fast food franchise required. (*Id.*) Charbel Biri, President of Subway, signed and initialed these changes on the RIR Form ETA-750. (*Id.*) Ms. Biri crossed out the handwritten date

-3-

of "12/14/01" and wrote "4/25/01," but she did not initial this change. (*Id.*, A.R. at 103.) Petitioner also signed the RIR Form ETA-750, crossed out the hand-written date of "12/14/01," wrote "4/25/01," but did not initial this change. (*Id.*, A.R. at 105.) In support of its RIR request for the Supervisor/Food Consultant position, Subway submitted proof of newspaper advertisements and postings on the company's job opportunity bulletin board for at least ten days between August 30, 2001, and December 14, 2001. (*Id.,* A.R. at 107-113.)

The Department of Labor certified the Supervisor/Food Consultant position on July 2, 2002, indicating that the date of acceptance for processing was December 20, 2001. (*Id.*, A.R. at 106.) While there was no explanation for the priority date of December 20, 2001, rather than the April 30, 2001, date requested by Petitioner's counsel, Respondents assert that the Department of Labor must have refused to convert the RIR based on 66 Fed. Reg. 40584-90 at 40587 (August 3, 2001). This regulation states that if the duties and requirements of the job offer are changed to such an extent that it becomes a new job opportunity, the RIR case must be refiled as a new certification. (*Id.*)

### 2. Form I-140, Visa Petition

Subway began the second of the three-part immigration process by filing Form I-140, Immigrant Petition for Alien Worker, ("Form I-140" or "Visa Petition") with the United States Citizenship and Immigration Services ("USCIS") on November 21, 2002. Subway's Form I-140 was supported by the certified RIR Form ETA-750 and final determination letter. (*Id.*, A.R. at 97-101.) USCIS approved the Form I-140 on July 21, 2003, classifying Petitioner as a "203(b)(3)(A)(i) Skilled Worker." (A.R. at 97.) The Form I-140 priority date is December 20, 2001, the date on which the accompanying labor certification was accepted for processing by the Department of Labor,

pursuant to 8 C.F.R. § 204.5(d).[1]

### 3. Form I-485, Application for Adjustment of Status

The third and final step of the employment-based immigration process requires the alien worker to file a Form I-485, application for adjustment of status ("I-485," or "application for adjustment of status"), pursuant to 8 U.S.C. § 1255. This provision allows the "Attorney General [by delegation to USCIS], in his discretion and under such regulations as he may prescribe" to grant adjustment of status to eligible aliens in the United States, in lieu of the aliens having to depart the United States and complete the third step of the employment-based immigration process by applying for an immigrant visa at a United States consular office abroad. In order to be granted employment-based adjustment of status, the applicant bears the burden of demonstrating that he: (1) is the beneficiary of an approved Form I-140 Visa Petition; (2) is not inadmissible to the United States for various criminal/medical and other grounds; (3) has a visa number immediately available under the country and preference category annual quotas set by Congress; (4) is in lawful non-immigrant status; and (5) has not accepted unauthorized employment or been employed while an unauthorized alien for more than an aggregate period of 180 days. 8 U.S.C. § 1255(a),(c), and (k).

Title 8, U.S.C. § 1255(i) allows certain aliens to apply to adjust their status upon payment of a $1,000 surcharge, even though the alien does not meet the maintenance of lawful non-immigrant

---

[1] 8 C.F.R. § 204.5(d) provides in pertinent part:

Priority date. The priority date of any petition filed for classification under section 203(b) of the Act which is accompanied by an individual labor certification from the Department of Labor shall be the date the request for certification was accepted for processing by any office within the employment service system of the Department of Labor. The priority date of a petition filed for classification as a special immigrant under section 203(b)(4) of the Act shall be the date the completed, signed petition (including all initial evidence and the correct fee) is properly filed with the Service....

status and authorized employment requirements of 8 U.S.C. § 1255(c). However, under 8 U.S.C. § 1255(i)(1)(B)(ii), an alien qualifies for the special adjustment penalty fee only if he "is the beneficiary" of "an application for labor certification that was filed pursuant to the regulations of the Secretary of Labor" on or before April 30, 2001. This provision serves to "grandfather" the alien beneficiary; that is, this application preserves the alien's ability to file an application for adjustment of status, accompanied by the $1,000 penalty fee, if the Form ETA-750 labor certification was "properly filed" and "approvable when filed," pursuant to 8 C.F.R. § 245.10(a), on or before April 30, 2001.[2]

Petitioner filed his Form I-485 with USCIS on November 21, 2002. (Resp'ts' Mot. to Dismiss, Ex. A., A.R. at 5.) Petitioner's Form I-485 was denied by USCIS on September 7, 2004, because the record demonstrated that he had accepted unauthorized employment for more than 180 days, or otherwise violated his non-immigrant visa. (*Id.,* A.R. at 1-4.) In its denial letter, USCIS stated that nothing in Plaintiff's original Form I-485 filing suggested that he was eligible for grandfather status under 8 U.S.C. § 1255(i), because the Department of Labor approved his RIR Form ETA-750 on December 20, 2001, months after the final eligibility date of April 30, 2001. (*Id.*, A.R. at 3.) Finally, USCIS's denial letter stated that "regulations do not provide for an appeal of

---

[2] "Properly filed" means that the application was properly filed and accepted by the Department of Labor pursuant to 20 C.F.R. § 656.21. 8 C.F.R. § 245.10(a)(2). "Approvable when filed" means that, as of the date of the filing of the qualifying application for labor certification, the qualifying application was properly filed, meritorious in fact, and non-frivolous ("frivolous" being defined herein as patently without substance). 8 C.F.R. § 245.10(a)(3). This determination will be made based on the circumstances that existed at the time the qualifying application was filed. *Id.*

this decision." (*Id.,* A.R. at 4.)

### C. Motion to Reopen

On September 23, 2004, Petitioner filed a Motion to Reopen with USCIS. Petitioner argued that he should have been classified as a grandfathered alien under 8 U.S.C. § 1255(i) because Form ETA-750, filed by Subway on April 30, 2001, was "properly filed" and "approvable when filed." (*Id.,* A.R. at 134-35.) USCIS dismissed Petitioner's Motion to Reopen, stating that "your motion neither provides new evidence, provides precedent decisions to consider, nor establishes that the decision was incorrect based upon the evidence of record at the time." (*Id.*, A.R. at 147.)

### D. Motion to Reopen/Reconsider

Petitioner filed a Motion to Reopen/Reconsider on June 22, 2005. (*Id.,* A.R. at 148-59.) In the Motion, Petitioner's counsel explained the sequence of events regarding the labor certification filing:

> A labor certification application was received by the Ohio Department of Job and Family Services for Mr. Nassif on April 30, 2001. A letter was sent from the state of Ohio to our office on September 27, 2001 acknowledging the receipt of such application and assigning it a priority date of April 30, 2001. The Ohio case number was 9453.
>
> On November, 7, 2001 the state of Ohio issued a 45-day letter requesting changes to the original ETA 750 Part A form which they included with the letter. The application had been coded by the state of Ohio with the priority date of April 30, 2001 as well as DOT coding and Occ. Title.
>
> On December 18, 2001, we sent a response to the state of Ohio requesting that the application on April 30, 2001 be converted to an RIR ... case to be processed at a faster pace. The state of Ohio accepted the request but issued a new priority date of December 20, 2001. Please note case number stayed the same, 9453.
>
> On April 5, 2002, the state of Ohio issued a letter informing us that the labor certification case had been forwarded to the regional certifying office for certification. The labor certification was subsequently approved on July 2, 2002.

(*Id.,* A.R. 148.) Petitioner stated that he had provided proof of an April 30, 2001, Form ETA-750

-7-

filing with the Department of Labor, and that "the fact that the priority date was subsequently changed by the Department of Labor does not make [Petitioner] ineligible for his green card." (*Id.*, A.R. 148-149.) USCIS denied Petitioner's Motion to Reopen/Reconsider, stating again that "your motion provides neither new evidence, nor provides precedent decisions to consider, nor establishes that the decision was incorrect based upon the evidence of record at the time." (*Id.*, A.R. at 147.)

### E. Petition for Writ of Mandamus

This mandamus action was filed on October 24, 2006. In his Petition, Petitioner asks the court to order USCIS to adjudicate his I-485 Petition as a member of the grandfathered class that is eligible to have his status adjusted, pursuant to 8 U.S.C. § 1255(i). (Pet. for Writ. of Mandamus, ("Pet."), ECF No. 1.) Petitioner emphasizes that "he is well aware that for these proceedings that this Court cannot order USCIS to grant the adjustment request, but it is well within their jurisdiction to order USCIS to consider his application as a member of the grandfathered class." (Pet. at 4.)

### II. LAW AND ARGUMENT

Respondents argue that the Petition for Writ of Mandamus should be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6), respectively. The court is bound to consider the Rule 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citation omitted)). For the foregoing reasons, the court grants Respondents' Rule 12(b)(1) motion and, as a result, denies the Rule 12(b)(6) motion as moot.

### A. Rule (12)(b)(1) Motion

Plaintiff has the burden of proving jurisdiction in order to survive a Rule 12(b)(1) motion.

*Moir*, 895 F.2d at 269. If the attack on jurisdiction is a facial attack on the complaint, the court must accept the allegations in the complaint as true and construe them in a light most favorable to the non-moving party. *United States v. A.D. Roe Co., Inc.*, 186 F.3d 717, 721-22 (6th Cir. 1999). If the attack is factual, however, the court may look to evidence outside the pleadings and resolve factual disputes. *Id.*

The elements for a district court to issue a writ of mandamus are set forth in 28 U.S.C. § 1361, which states: "The district court shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty to the plaintiff." The existence of mandamus jurisdiction is "inextricably bound with the merits of whether a writ of mandamus should issue" because, in order to establish either jurisdiction or entitlement to the writ, a court must find that a nondiscretionary duty is owed to the petitioner. *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir. 1987) (dismissing the petitioner's mandamus action seeking back pay, pursuant to an EEOC order, because the order was subject to differing interpretations). Mandamus is a drastic remedy that should be applied only if: (1) the petitioner has exhausted all other avenues of relief; and (2) the respondents owe the petitioner a clear, nondiscretionary duty. *Heckler v. Ringer*, 466 U.S. 602, 617 (1984).

### 1. Petitioner Must Exhaust All Other Avenues of Relief

Petitioner does not argue, and the court does not find, that Petitioner has exhausted all other avenues of relief. Therefore, the court finds that it lacks mandamus jurisdiction; as a result, the court does not have subject matter jurisdiction under Rule 12(b)(1).

Although Petitioner's Form I-485 denial letter from USCIS stated that regulations do not provide for an appeal of the Form I-485 adjustment of status, (Resp'ts' Mot. to Dismiss, Ex. A, A.R.

-9-

at 4), courts have held that they lack mandamus jurisdiction in cases factually similar to the instant case because petitioners have administrative remedies available to them. For example, the Immigration and Naturalization Service ("INS"), the precursor agency to USCIS, denied Aurora Moran's ("Moran") application for adjustment of status in *Cardoso v. Reno,* 216 F.3d 512, 517-18 (5th Cir. 2000), on the ground that Moran was no longer an "eligible child" pursuant to 28 U.S.C. § 1153(a)(2)(A). In Moran's mandamus petition, she argued that the INS erred as a matter of law in refusing to classify her as an "eligible" child and subsequently denied her adjustment of status on this basis. The Fifth Circuit upheld the district court's dismissal of Moran's action for lack of mandamus jurisdiction, holding that the district court could not exercise jurisdiction because Moran did not exhaust the administrative remedies available to her under 8 C.F.R. § 245.2(a)(5)(ii):

> As a matter of jurisdiction, courts may not review the administrative decisions of the INS unless the appellant has first exhausted "all administrative remedies." I.N.A. 242(d), 8 U.S.C. 1252(d)(1999). In this case, although Moran may not directly appeal the immigration judge's denial of her request for adjustment of status, she may, nevertheless, renew her request upon the commencement of removal proceedings. *See* 8 C.F.R. § 245.2(a)(5)(ii)(1999) ("No appeal lies from the denial of an application by the director, but the applicant, if not an arriving alien, retains the right to renew his or her application in [removal] proceedings."); Austin T. Fragomen, Jr. *et al.*, Immigration Procedures Handbook 13-91 (1999) ("There is no direct appeal from [an adjustment of status] denial. . . . If the alien believes that the adjustment application was wrongly denied, he or she has the right to reapply for adjustment of status as a part of deportation proceedings brought against him or her by the INS. The alien has a right to appeal the denial of an adjustment application when … made during a removal proceeding.")

*Id.* (citing *McBrearty v. Perryman*, 212 F.3d 985, 986 (7th Cir. 2000) (holding that the petitioners failed to exhaust remedies on their adjustment of status claims where they "could obtain review of the district director's decision by the Board of Immigration Appeals ("BIA") if and when the immigration service institutes removal . . . proceedings against them"); *Randall v. Meese*, 854 F.2d 472, 482 (D.C. Cir. 1988) (declining to review denial of adjustment of status where deportation

proceedings had not commenced); *Chan v. Reno*, 916 F. Supp. 1289, 1297-99 (S.D. N.Y. 1996) (holding that exhaustion of administrative remedies doctrine precludes plaintiffs from seeking judicial review where they have not been subjected to deportation proceedings).

Moreover, in *Wang v. USCIS*, No. 07-CV-12497, 2007 U.S. Dist. LEXIS 81426, at *4-5 (E.D. Mich. Nov. 1, 2007), USCIS denied the petitioner's application for adjustment to permanent resident status as the unmarried daughter of a United States permanent resident. USCIS based its decision on the fact that the petitioner, who had been admitted to the United States under a K-1 visa as a nonimmigrant fiancé of a United States citizen, had failed to marry within 90 days of entry, and this failure therefore precluded an adjustment of Wang's status as a child of a United States permanent resident. *Id.*

The *Wang* petitioner argued that she had exhausted her administrative remedies because removal proceedings had not yet been initiated and, in any event, re-application of an adjustment of status is not an administrative appeal. In holding that the district court lacked subject matter jurisdiction, the court noted that "[t]he Second, Fifth, and Tenth Circuits have held that federal district courts lack jurisdiction to review a USCIS District Director's denial of an adjustment of status under 8 U.S.C. § 1255(a)." *Id.* (citing *Cardoso v. Reno*, 216 F.3d 512 (5th Cir. 2000); *McBrearty v. Perryman*, 212 F.3d 985 (7th Cir. 2000); *Howell v. INS,* 72 F.3d 288 (2nd Cir. 1995)). The *Wang* court noted that the "themes" of these decisions are:

> (1) an alien denied an adjustment of status by the USCIS enjoys the express right to renew the application in removal proceedings, 8 C.F.R. § 245.2(a)(5)(ii)...; (2) 8 U.S.C. § 1252(g) of the Illegal Immigration Reform and Immigration Responsibility Act expressly denies a district court jurisdiction to hear any claim arising from the decision or action of the Attorney General "to commence proceedings, adjudicate cases, or execute removal orders . . . ."

*Id.*³   Here, Petitioner does not argue that he has exhausted all other avenues of relief.  In any event, the court finds that the facts do not support such a conclusion.  Like petitioner, Moran, in *Cardoso,* who argued that the INS erred in denying her adjustment of status because they refused to classify her as an eligible child, Petitioner argues that, as a matter of law, USCIS erred in denying his adjustment of status because he submitted an "approvable when filed" Form ETA-750 on April 30, 2001, and he therefore should have been classified as a member of the grandfathered class eligible for adjustment.  Like the *Moran* court, this court finds that Petitioner has not exhausted the administrative remedies available to him because, although Petitioner may not directly appeal the USCIS's denial of adjustment of status, he may, nevertheless, renew his request upon the commencement of removal proceedings.  This proceeding will be held before an Immigration Judge, and, in the event of a denial of Petitioner's argument, Petitioner can appeal the Immigration Judge's ruling to the BIA and the Sixth Circuit.  *See generally, Matovski v. Gonzales,* 492 F.3d 722, 734 (6th Cir. 2007.)  Moreover, like the *Wang* court, this court finds that it is immaterial that removal proceedings have not yet been initiated against Petitioner, and it also finds that the court lacks

---

³   The court recognizes that in *Lockhart v. Chertoff,* No. 1:07CV823, 2008 U.S. Dist. LEXIS 889, at *15 (N.D. Ohio Jan. 7, 2008), the Northern District of Ohio held that the court had mandamus jurisdiction to determine whether, as a matter of law, USCIS erred in denying a petitioner's Form I-130 and Form I-485 on the basis that the petitioner was not an "immediate relative" spouse of a United States citizen.  The basis of that decision was that the petitioner's I-485 application was entirely dependent on an approved Form I-130 petition, and it would thus be futile for the petitioner to renew the application in her removal proceedings. The instant case is distinguishable from *Lockhart* because, unlike the *Lockhart* petitioner,  Petitioner's Form I-140 was granted, and it therefore would not be futile for him to renew the request for adjustment of status in removal proceedings.

jurisdiction to review a USCIS District Director's denial of an adjustment of status under 8 U.S.C. § 1252(g).

Accordingly, the court finds that it lacks mandamus jurisdiction because Petitioner has not exhausted all other avenues of relief. While the court recognizes that it appears harsh that Petitioner would have to await removal proceedings to challenge the denial of the Form I-485, the court finds that the law discussed above constrains the court under these circumstances.

### 2. Respondents Must Owe Petitioner a Clear, Nondiscretionary Duty

Since, as stated above, the court finds that it lacks mandamus jurisdiction because Petitioner has not exhausted all other avenues of relief, the court need not address whether Respondents have a clear, nondiscretionary duty to place Petitioner in the grandfathered class of individuals eligible for adjustment of status, pursuant to U.S.C. § 1255(i). Accordingly, for the above-stated reasons, the court grants Respondents' Motion to Dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1).

## B. Rule 12(b)(6) Motion

As discussed above, the court finds, pursuant to Rule 12(b)(1), that it lacks subject matter jurisdiction. Accordingly, Respondents' Motion to Dismiss, pursuant to Rule 12(b)(6), is denied as moot. *See Moir*, 895 F.2d at 269.

## III. CONCLUSION

-13-

For the above-stated reasons, the court grants Respondents' Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1). The court denies as moot Respondents' Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 22.)

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

March 20, 2008